# EXHIBIT "A"

IN THE SUPERIOR COURT OF TIFT COUNTY, GEORGIA
STATE OF GEORGIA

BOBBY LEE HURLEY, JR., as
Administrator of the Estate of JESSIE
MAE HURLEY, Deceased and on Behalf
of the Wrongful Death Beneficiaries of
JESSIE MAE HURLEY, Deceased.

    Plaintiff,

v.

                            CASE NO:  2013CV067

GGNSC TIFTON L.L.C. and
GGNSC EQUITY HOLDINGS L.L.C.

    Defendant.

_____/

FILED IN OFFICE

FEB 1 2 2013

GWEN PATE, CLERK OF COURT
_____ DC

## COMPLAINT

COMES NOW, BOBBY LEE HURLEY, JR., as Administrator of the Estate of

JESSIE MAE HURLEY, Deceased, and on Behalf of the Wrongful Death Beneficiaries

of JESSIE MAE HURLEY, Deceased, Plaintiff in the above-styled action and files this

Complaint against GGNSC TIFTON L.L.C. and GGNSC EQUITY HOLDINGS L.L.C.

In support thereof Plaintiff states as follows:

### PARTIES AND JURISDICTION

1.      Plaintiff, BOBBY LEE HURLEY, JR. is a resident of Georgia and the son

of JESSIE MAE HURLEY, as well as the duly appointed Administrator of the Estate of

JESSIE MAE HURLEY.

2.      Defendant, GGNSC TIFTON L.L.C. with the principal address of 1451

Newton Drive, Tifton, GA 31794, which is subject to the jurisdiction and venue of this

Court.  Service of process may be perfected upon its Registered Agent, Corporation

Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

3.      Defendant, GGNSC EQUITY HOLDINGS, L.L.C., with the address of 1000 Fiana Way, Fort Smith, AR 72919, which is subject to the jurisdiction and venue of this Court.  Service of process may be perfected upon its registered agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

4.      During the time relevant to the issues in this case, Defendant GGNSC EQUITY HOLDINGS L.L.C., owned, operated, dominated, managed, and made personnel decisions regarding GOLDEN LIVING CENTER – TIFTON, and employed the personnel at GOLDEN LIVING CENTER – TIFTON directly and/or through its alter ego, agent, apparent agent, and wholly owned subsidiary Defendant, GGNSC TIFTON L.L.C.

5.      During the time frame relevant to the issues in this case, GGNSC TIFTON L.L.C. was the licensee of GOLDEN LIVING CENTER – TIFTON.

6.      GOLDEN LIVING CENTER – TIFTON is the skilled nursing facility located at the physical address of 1451 Newton Drive, Tifton, GA 31794.

7.      This action is an action for damages in excess of Ten Thousand Dollars ($10,000.00).

8.      Venue is proper in the Superior Court of Tift County since the causes of action accrued in whole or in part in Tift County and Defendants transact business in and/or reside in Tift County.

## FACTS

9.      JESSIE MAE HURLEY was admitted to GOLDEN LIVING CENTER - TIFTON on or about October 2, 2009.

10.    GOLDEN LIVING CENTER - TIFTON is a skilled nursing facility and a long-term care facility.

11.    Defendant, GOLDEN LIVING CENTER - TIFTON at all relevant times, had a statutory duty to provide each resident, including JESSIE MAE HURLEY, the necessary care and services to attain or maintain the highest practicable physical, mental, and psychosocial well-being.

12.    While in the care and custody of Defendant, JESSIE MAE HURLEY, suffered from injuries including an acute comminuted distal femoral fracture; multiple pressure ulcers including to the right thigh, buttocks, and heels; infection; and ultimately her death.

## COUNT I – NEGLIGENCE – ESTATE CLAIM

13.    Plaintiff incorporates by reference as if fully set forth every allegation set forth in Paragraphs 1- 12 above.

14.    Defendant GOLDEN LIVING CENTER - TIFTON had full legal authority and responsibility for the operation of its nursing home facility during all relevant times of JESSIE MAE HURLEY'S residency.

15.    Defendant GOLDEN LIVING CENTER - TIFTON owed a non-delegable duty to JESSIE MAE HURLEY to exercise reasonable care while she was a resident at its nursing home facility.

16.    Defendant, GOLDEN LIVING CENTER - TIFTON was liable for the negligence of any staff working at its nursing home facility and/or Defendant's employees based on the theory of respondeat superior agency and/or apparent agency.

17.     Defendant's employees negligently cared for JESSIE MAE HURLEY by failing to exercise reasonable care, including:

a)      failing to provide two person assistance when providing bed mobility;

b)      failing to provide an adequate and individually tailored plan of care for the prevention and treatment of pressure ulcers;

c)      failing to provide adequate pressure relief and pressure ulcer prevention measures;

d)      failing to use due care in assisting Jessie Mae Hurley with activities of daily living, including hygiene care; and

e)      failing to provide adequate pressure relief related to a foley catheter that cause a pressure ulcer to Jessie Mae Hurley's right thigh.

18.     As a direct and proximate result of the negligence of Defendant and/or Defendant's employees, JESSIE MAE HURLEY, sustained severe injuries of the mind and body, pain and suffering, a fracture, severe pressure ulcers, the necessary cost of medical care and ultimately her death.

## COUNT II – NEGLIGENCE – WRONGFUL DEATH

19.     Plaintiff incorporates by reference as if fully set forth every allegation set forth in Paragraphs 1 to 18 above.

20.     Plaintiff, Bobby Lee Hurley, Jr., as a wrongful death beneficiary and on behalf of the wrongful death beneficiaries is entitled to be compensated the full value of Jessie Mae Hurley's life against each Defendant, jointly and severally due to their negligence and any other damages that she is entitled to under Georgia law.

## COUNT III – PROFESSIONAL NEGLIGENCE

21.     Plaintiff incorporates by reference as if fully set forth every allegation set forth in Paragraph 1 to 20 above.

22.    Defendants' negligence, includes those negligent acts and/or omissions set forth in the Affidavit of Kirk Mauro, M.D., which is filed with this Complaint pursuant to the requirements of O.C.G.A. Sec. 9-11-9.1. This Affidavit is incorporated into this Complaint as Exhibit "A."

23.    A medical authorization form is attached to this Complaint as Exhibit "B" to be in compliance with O.C.G.A. Sec. 9-11-9.2(a). However, Defendant assumes the risk for any violation of the Privacy Rule of the Health Insurance Portability and Accountability Act ("HIPAA").

24.    As a direct and proximate result of the negligence of the Defendant and/or Defendant's employees, JESSIE MAE HURLEY, sustained severe injuries of the mind and body, pain and suffering, a severe pressure ulcers, the necessary cost of medical care and ultimately her death.

25.    JESSIE MAE HURLEY is entitled to recover all damages, which the jury determines to be proper including damages for his pain and suffering and medical expenses.

## COUNT IV -- NEGLIGENCE PER SE

### Violation of Bill of Rights – O.C.G.A. SEC. 31-8-100, *et. seq.*

26.    Plaintiff incorporates by reference as if fully set forth every allegation set forth in Paragraphs 1 to 25 above.

27.    The Georgia Bill of Rights for Residents of Long-Term Care Facilities was enacted to protect nursing home residents, such as JESSIE MAE HURLEY, from abuse and neglect and to ensure their dignity and personal integrity.

28.     The Bill of Rights for Residents of Long-Term Care Facilities, O.C.G.A.

Sec. 31-8-108(a) provides that residents of Long-Term Care Facilities, including JESSIE

MAE HURLEY, are entitled to receive care, treatment and services, which are adequate

and appropriate.

29.     Moreover, Georgia law provides that the care, treatment and services shall

be provided with reasonable care and skill, in compliance with applicable laws and

regulations, with respect for the resident's personal dignity and privacy.

30.     Defendant's acts and omissions as stated in this Complaint and Exhibit

"A" to this Complaint violated the Bill of Rights for Residents of Long-Term Care

Facilities and as a direct and proximate result, JESSIE MAE HURLEY sustained severe

injuries of the mind and body, pain and suffering and the necessary cost of medical care.

31.     JESSIE MAE HURLEY is entitled to recover all damages, which the jury

determines to be proper including damages for JESSIE MAE HURLEY'S pain and

suffering and medical expenses.

## COUNT V – STATUTORY CAUSE OF ACTION

32.     Plaintiff incorporates by reference as if fully set forth every allegation set

forth in Paragraphs 1 to 31 above.

33.     O.C.G.A. Sec. 31-8-126 expressly provides that "[a]ny person or persons

aggrieved because a long-term care facility has violated or failed to provide any right

granted under this article shall have a cause of action against such facility for damages

and such other relief as the court having jurisdiction of the action deems proper."

34.     The Georgia Bill of Rights for Residents of Long-Term Care Facilities,

O.C.G.A. Sec. 31-8-108(a) provides that residents of Long-Term Care Facilities, such as

JESSIE MAE HURLEY, are entitled to receive care, treatment and services, which are adequate and appropriate.

35.    Moreover, Georgia law provides that the care, treatment, and services shall be provided with reasonable care and skill, in compliance with applicable laws and regulations, with respect for the resident's personal dignity and privacy.

36.    Defendant's acts and omissions as stated in this Complaint and in Exhibit "A" violated the Georgia Bill of Rights for Residents of Long-Term Care Facilities and as a direct and proximate result, JESSIE MAE HURLEY sustained severe injuries of the mind and body, pain and suffering, and the necessary cost of medical care.

37.    JESSIE MAE HURLEY is entitled to recover all damages which the court deems proper and the jury determines to be proper including damages for JESSIE MAE HURLEY'S pain and suffering and medical expenses.

## COUNT VI – WILFUL, WANTON, RECKLESS CONDUCT

38.    Plaintiff incorporates by reference as if fully set forth every allegation set forth in Paragraphs 1 to 37 above.

39.    Defendant and their employees repeated and continuous failures as set forth herein rise to the level of displaying willful, wanton and reckless disregard and evidence an entire want of care, which would raise a presumption of conscious indifference to the consequences.

40.    Defendant's conduct is such that Plaintiff is entitled to punitive damages from Defendant, therefore in order to punish, penalize and deter Defendant from further repetition of the conduct alleged herein.

41.    WHEREFORE, Plaintiff prays for the following:

a.   that Summons be issued and served upon the Defendant as
     provided by law;
b.   that all issues herein be tried before a jury;
c.   that the Plaintiff has judgment entered in his favor against the
          Defendant, jointly and severally in an amount in excess of
          $10,000.00 for all damages, together with punitive,
          recoverable by law;
d.   that all costs of this action be cast against the Defendant; and
e.   that Plaintiff has such relief as is just and proper.

                         Respectfully Submitted,


                         _____
                         Eric K. Milles, Esq.
                         GA BAR # 508982
                         GARVIN & MILLES, P.A.
                         1672 Metropolitan Circle
                         Tallahassee, FL 32308
                         T:  (850) 422-3400
                         F:  (850) 906-9878

AFFIDAVIT

STATE OF FLORIDA
COUNTY OF LEON

Before me, the undersigned officer duly authorized to administer oaths came Kirk Mauro, M.D., who after first being duly sworn, states as follows:

I am a medical doctor licensed in Florida and Georgia. I am a board certified physiatrist. I am currently a medical director of therapy and have been the medical director of therapy of several skilled nursing facilities and rehabilitation hospitals. I am director of Medical Rehabilitation Specialists & Injury Care Clinic. I am familiar with the standard of care for the care and treatment of persons in the condition of Jessie Mae Hurley and the standard of care owed to residents of a nursing home.

I have reviewed the following records pertaining to Jessie Mae Hurley: Golden Living Center – Tifton (Golden Living) and Tift Regional Medical Center. My review of these records, along with my professional experience, leads me to the opinion that the care provided by Golden Living, their nursing staff, and other employees fell outside of the standard of care in the care and treatment of Jessie Mae Hurley and caused injury.

The failures in care that I have identified related primarily to deviations in the standard of care in the following areas:

1. Failure to provide Jessie Mae Hurley with adequate assistance and fall prevention precautions; and,

2. Failure to provide Jessie Mae Hurley with adequate prevention and treatment of pressure ulcers.

On October 2, 2009, Jessie Mae Hurley (9/17/1937) was admitted to Golden Living. Jessie Mae Hurley had admitting diagnoses including hypertension, obesity, Chronic Kidney disease and diabetes. Jessie Mae Hurley Jessie was nonambulatory upon admission, wheelchair propelled by staff is used for locomotion, and a lift was needed for transfers.

The October 2, 2009 admission assessment into Golden Living noted a Braden Scale score of 16 (Mild Risk). An October 14, 2009 M.D.S. notes that Jessie Mae Hurley had short-term memory problem, moderately impaired cognitive skills for daily decision making, decisions poor, cues/supervision required and that Jessie Mae Hurley had a responsible party. The October 2009 M.D.S. noted that Jessie Mae Hurley did not have any pressure ulcers



A M.D.S. with an assessment reference date of July 8, 2010 noted that Jessie Mae Hurley had memory problems and moderately impaired cognitive skills for daily decision making. Jessie Mae Hurley was assessed as needing the extensive physical assistance of two persons for bed mobility and total dependence on two person physical assistance for transfers. Jessie Mae Hurley was unable to even attempt the test for balance while standing or sitting. Jessie Mae Hurley did not have any pressure ulcers or other skin problems according to the July 2010 M.D.S.

Wound documentation from September and October of 2010 indicated that Jessie Mae Hurley developed two pressure ulcers on her left buttock during this time frame with both of the ulcers healing by early October. The wound documentation does not include documentation of a right buttock wound during this time frame. September 17, 2010 Plan of Care notes a small open area to the right buttock.

A Wound Evaluation Flow Sheet from November 11, 2010 notes an open area to the left foot 1st and 2nd digit as well as left Great toe. A Wound Evaluation Flow Sheet from December 13, 2010 notes an open blister had developed to Jessie Mae Hurley's Right Buttock. A Wound Evaluation Flow Sheet from December 16, 2010 noted an open peeling area to right inner buttock. A December 16, 2010 physician's note ordered duoderm for an open peeling area to the right inner buttock.

On January 17, 2011, Jessie Mae Hurley had an Ankle-Brachial Index test, and Dr. William H. Davis found that there were normal ABI's. By February 9, 2011, Wound Evaluation Flow Sheets noted that the wounds to the toes on the left foot were closed/healed. On March 2, 2011, Golden Living staff noted an open area to left and right great toes.

On March 11, 2011, L.P.N. Saunders observed purulent drainage to the left foot great toe and obtained new order to collect wound culture. On March 15, 2011, R.N. Evans noted that the right inner buttock pealing area was resolved. On March 31, 2011, a CNA reported a small open area to buttocks.

The April 4, 2011 Quarterly Interdisciplinary Resident Review noted that Jessie Mae Hurley was 330 pounds, had an open wound to left great toe and left buttocks. On April 6, 2011 a Golden Living skin assessment form noted that Jessie Mae Hurley had open areas to left buttock and right lower buttock and left great toe.

An April 7, 2011 Lift/Movement Assessment for Residents indicated that Jessie Mae Hurley required a Marisa Lift and that Maxi Slide assistance with movement in bed required. Jessie Mae Hurley was admitted to Tift Regional Medical Center on April 7, 2011 related to a positive hemoccult. A surgery procedure was completed at Tift Regional Medical Center that removed a chicken bone from Jessie Mae Hurley's cecum.

On April 19, 2011, the resident's family attended the care plan meeting. It is noted that the family is "overall happy with her care, but they did state that sometimes the

call light is not answered timely. It is noted that the nursing supervisor was present and aware of the issue with call light."

The May 6, 2011 Wound Evaluation Flow Sheet noted a left inner thigh wound. Wound Evaluation Flow Sheet from May of 2011 indicated that the right great toe and left great toe were not healing and that Jessie Mae Hurley has an appointment with a wound care M.D. in June. On May 27, 2011, Wound Evaluation Flow Sheet noted the Right Buttock wound was healing well.

June 8, 2011 Nurse Treatment Notes noted that Jessie Mae Hurley returned from appointment with Dr. Burton with orders for x-rays of both feet and CBC, soft foam AFO's for foot/heal bilateral, three phase bone scan to RT and LEF foot, and follow up with wound care clinic on June 29, 2011. Jessie Mae Hurley was transferred to Tift Regional Medical Center on June 9, 2011 due to abnormal lab results.

On June 13, 2011, an admission skin assessment done at Golden Living noted that Jessie Mae Hurley had skin concern noted to left and right big toe. This admission assessment also noted that Jessie Mae Hurley was cognitively impaired and had impaired decision making ability at times. Jessie Mae Hurley was also noted to be obese patient confined to bed and only transfer via lift to chair at times. Jessie Mae Hurley was noted as diabetic and wearing depends at all times. A June 13, 2011 Lift/Movement Assessment for Residents noted that Jessie Mae Hurley could not bear weight on at least one leg and noted that resident was not able to grip with at least one hand, and that resident is not able to undergo moderate pressure to the mid to lower back. This assessment indicated that a consult with the physical therapy director was indicated.

A June 29, 2011 Nurse Treatment Notes noted new orders from wound care center: toes healing and essentially closed on Right fully closed on left toes healing. Continue with the off loading boots from now on.

On July 1, 2011 Quarterly Interdisciplinary Resident Review, Jessie Mae Hurley noted as having no memory problems and independent in decision making. No ulcers were noted on Jessie Mae Hurley's feet on this assessment and Jessie Mae Hurley had a braden scale score of 14 (moderate). This assessment also noted that Jessie Mae Hurley did not walk and used a wheelchair.

The July 3, 2011 M.D.S. noted that no pressure ulcers present. The weekly skin assessments from July 2011 only noted open areas to left and right great toes. The July 12, 2011 Social Service Progress Note noted that the resident is doing well overall. On July 22, 2011, Golden Living staff noted that Jessie Mae Hurley weighed 323 pounds. Jessie Mae Hurley's physician visited on July 22, 2011 and ordered Bactrim, culture to left great toe and x-ray to left great toe.

A Change in Condition Report dated July 24, 2011 – Post Fall/Trauma noted that resident slipped/fell out of bed while getting changed by CNA. The interventions

used prior to fall only included ½ bedrails and call light within reach. Recommendations and interventions included a mechanical lift for transfer and noted the recommendation to encourage staff to use 2 person assist.

On July 24, 2011, the nurse's progress notes noted that nurses summoned to room by CNA. CNA stated, "I was trying to change her and she kept sliding and she eventually slid out of bed." Resident has complaint of pain to left leg and stated "I'm hurting all over." A fall was noted on Jessie Mae Hurley's fall Plan of Care on July 24, 2011, and there was an additional intervention added to "encourage staff to use 2 person assist at all times."

On July 24, 2011, Dr. Kavtarade order Jessie Mae Hurley to be sent to ER for evaluation of left leg pain after fall. Jessie Mae Hurley was transferred from Golden Living to Tift Regional Medical Center on July 24, 2011 complaining of left leg and left shoulder pain. Golden Living Staff told Tift County EMS that patient was being changed and slid off the bed. Jessie Mae Hurley was noted to have an abrasion on the dorsum of the left great toe. Dr. Robin A. Stoecker, D.O., Radiologist observed an acute comminuted/intraarticular fracture of the distal femoral metaphysis and epiphysis.

On August 1, 2011, Jessie Mae Hurley was discharged from hospital back to Golden Living. Upon readmission to Golden Living, Jessie Mae Hurley was assessed as being non ambulatory and unable to turn from side to side unassisted, but having no alterations in safety awareness due to cognitive decline

The August 1, 2011, admission assessment into Golden Living noted stage II bilateral open wounds being present to each buttocks without any measurements. Dr. Kavtaradze ordered duoderm to left buttock. Dr. Kavtaradze also ordered wound care to the right posterior thigh just beneath the buttock and to the right buttock open wound. A healed foot ulcer(s) was also noted on this admission. The Braden Scale noted that Jessie Mae Hurley's activity level was bedfast due to the left leg femur fracture and that there was a score of 14, moderate. A pain assessment from August 2, 2011 noted that Jessie Mae Hurley had pain intensity in between distressing and severe, daily pain, and pain impacting quality of live due to the recent fracture and buttocks pressure ulcers.

On August 1, 2011, Jessie Mae Hurley was noted to have some redness but not a decubitus ulcer on the perineal/genitalia/gluteal condition. Wound Evaluation Flow Sheets from August 1, 2011 noted stage II pressure ulcers on the left and right buttocks and right posterior thigh. The August 8, 2011 M.D.S. notes that Jessie Mae Hurley had two Stage II pressure ulcers present, and did not note any other diabetic ulcers, wounds or skin problems.

The September wound care treatment sheet notes that the left buttock and right buttock wounds were healed on September 20, 2011. The November 1, 2011 Wound Evaluation Flow Sheets noted an open split between the buttocks and an

open area to left anterior brief line. The November 8, 2011 M.D.S. notes that Jessie Mae Hurley had two Stage II pressure ulcers present. The November 22, 2011 Minimum Data Set fails to note any pressure ulcers, diabetic ulcers or other wounds being present.

A Golden Living skin assessment from December 5, 2011 admission assessment noted an open ulcer to Jessie Mae Hurley's left great toe as well as multiple small open pressure ulcers to the right buttocks. The associated Braden Assessment scores Jessie Mae Hurley has having moderate risk. A Wound Evaluation Flow Sheet from December 5, 2011 noted an unstageable pressure ulcer to the left posterior leg. On December 5, 2011, Dr. Kavtaradze ordered a wound care follow up with Dr. Burton on December 14th at 3:30 p.m. December 5, 2011 wound care orders included wound care to left posterior leg,

A Wound Evaluation Flow Sheets from December 6, 2011 noted a stage II pressure ulcer to the left and right buttock and sacral. A December 6, 2012 Wound Evaluation Flow Sheet noted open areas to the left inner thigh at the brief line and left posterior thigh. The December 8, 2011 Quarterly Interdisciplinary Resident Review does not note any foot ulcers or other skin concerns, and the accompanying Braden Assessment scored Jessie Mae Hurley a 14 with Moderate Risk.

The December 18, 2011 M.D.S. noted that Jessie Mae Hurley had three Stage II pressure ulcers and an unstageable necrotic pressure ulcer measuring 3.0 by 1.4 cm. On December 31, 2011, Dr. Kavtaradze ordered wound care to left inner thigh areas and to open areas to left posterior thigh wound.

A January 9, 2012 Wound Evaluation Flow Sheet noted a wound to the right posterior thigh. The January 11, 2012 Minimum Data Set noted that Jessie Mae Hurley has a Stage I pressure ulcer present as well as 3 stage II pressure ulcers, and one necrotic, unstageable pressure ulcer measuring 3 by 1.4 cm. On January 11, 2012, Dr. Kavaradze ordered wound care to open blister to right posterior thigh.

On January 11, 2012 Jessie Mae Hurley was transferred to Tift Regional Medical Center due to vomiting coffee ground emesis and was admitted to ICU with sepsis and a UTI.

January 12, 2012 Photographic wound documentation from Tift Regional Medical Center noted numerous pressure ulcers including: (1) a full thickness Stage III to the right thigh caused by pressure from foley catheter prior to admission; (2) a Stage II pressure ulcer to the sacrum; (3) Unstageable pressure ulcer to left heel and left posterior lower extremity; and (4) pressure ulcer to the left inner thigh. The January 13, 2012 Quarterly Interdisciplinary Resident Review noted that Jessie Mae Hurley has a Stage II Buttock pressure ulcer and an open left great toe. On January 23, 2012, William J. Kaisar, M.D. performed a left above-knee amputation at Tift Regional Medical Center. On February 3, 2012, Jessie Mae Hurley was discharged back to Golden Living.

The February 3, 2012 admission assessment at Golden Living noted that Jessie Mae Hurley had numerous pressure ulcers. A February 4, 2012 Wound Evaluation Flow Sheet noted an unstageable wound to the right heel measuring 13 by 13 cm and appearing dark black. On February 6, 2012 Jessie Mae Hurley was transferred from Golden Living to Tift Regional Medical Center for an episode of unresponsiveness and discharged back to Golden Living that same day. On February 6, 2012, Dr. Kavtaradze ordered wound care for an open wound to split between buttock. On February 9, 2012, Jessie Mae Hurley went to dialysis from Golden Living. Dialysis had difficulty getting blood pressure and had Jessie Mae Hurley checked out at Tift Regional Medical Center.

The February 11, 2012 M.D.S. noted that Jessie Mae Hurley had nine (9) stage II pressure ulcers as well as two (2) unstageable pressure ulcers, including a necrotic pressure ulcer measuring 13.5 by 13.0 cm. Jessie Mae Hurley was transferred by Ambulance to Tift Regional Medical Center on February 11, 2012 with the primary diagnosis of septicemia and was admitted to ICU. A large 6-7 cm skin ulceration on the LLQ with slough and necrotic tissue noted. A stage II decubitus ulcer noted over sacral area. There was an extensive area of skin ulceration with sloughing approximately 15 cm long noted over the medial aspect of the right thigh and extending posteriorly. Seropurulent fluid was noted as actively draining from AKA wound and it is also noted that the stump appears unhealthy with sloughing and denudation. Jessie Mae Hurley ultimately passed away on March 14, 2012.

Golden Living and the nursing staff had the following duties under the standard of care including by not limited, to the following:

a. The duty to prove adequate and appropriate assistance to safely assist resident in activities of daily living;
b. The duty to provide adequate and appropriate fall prevention precautions to protect the resident from falling out of bed and sustaining serious injury;
c. The duty to implement adequate and appropriate measures to prevent the development of pressure ulcers; and
d. The duty to provide reasonable and prudent care under the circumstances.

It is my professional opinion that Golden Living and its nursing staff deviated from the standard of care and breached the above-stated duties for similarly situated health care providers in their care and treatment of Jessie Mae Hurley in the following ways, including:

a. failing to provide two person assistance when providing bed mobility to Jessie Mae Hurley on July 24, 2011;
b. failing to provide an adequate and individually tailored plan of care was in place on July 24, 2011;
c. failing to use due care in assisting Jessie Mae Hurley with activities of daily living on July 24, 2011;

d.  failing to ensure that Jessie Mae Hurley received adequate pressure relief;
e.  failing to provide adequate pressure relief related to a foley catheter that caused a pressure ulcer to right thigh; and
f.  failing to provide an adequate care plan related to pressure ulcer prevention.

The failures in the care of Jessie Mae Hurley while she was in the care of Golden Living caused her injuries including an acute comminuted distal femoral fracture, multiple pressure ulcers including to the right thigh, buttocks, and heels, infection, and ultimately her wrongful death.

I further state, that to the best of my knowledge, I have never had any opinions disqualified in any administrative forum, court of law, or other proceedings, nor have I ever been disqualified as an expert witness.  I have never been found guilty of fraud or perjury in any jurisdiction.

FURTHER AFFIANT SAYETH NOT.

Kirk Mauro, M.D

The foregoing Affidavit was acknowledged before me, an officer duly authorized in the State and County aforesaid, to take acknowledgements, this 29th day of JAN, 2013, by Kirk Mauro, M.D., who is either personally known to me or produced the following identification: _____.

Notary Signature

Colleen Laughlin
Printed Name

COLLEEN LAUGHLIN
NOTARY PUBLIC
STATE OF FLORIDA
Comm# EE102799
Expires 6/10/2016

IN THE SUPERIOR COURT OF TIFT COUNTY, GEORGIA
STATE OF GEORGIA

**BOBBY LEE HURLEY, JR., as
Administrator of the Estate of JESSIE
MAE HURLEY, Deceased and on Behalf
of the Wrongful Death Beneficiaries of
JESSIE MAE HURLEY, Deceased.**

     Plaintiff,

v.                     **CASE NO:**

**GGNSC TIFTON L.L.C. and
GGNSC EQUITY HOLDINGS L.L.C.**

     **Defendant.**

_____/

## O.C.G.A. § 9-11-9.2 AUTHORIZATION

     COMES NOW Plaintiff in the above-styled action, submits this Authorization pursuant to

O.C.G.A. § 9-11-9.2

     I, BOBBY LEE HURLEY, JR., hereby authorize the attorney representing GGNSC

TIFTON LLC and GGNSC EQUITY HOLDINGS, LLC, to obtain and disclose protected health

information contained in medical records to facilitate the investigation, evaluation, and defense of

the claims and allegations set forth in the Complaint, which pertain to JESSIE MAE HURLEY.

This authorization includes said defense attorney's right to discuss the care and treatment of

JESSIE MAE HURLEY with all of JESSIE MAE HURLEY'S treating physicians.

     This authorization provides for the release of all protected health information **except**

**information that is considered privileged** and authorizes the release of such information to said

defense attorney by any physician or health care facility by which health care records of JESSIE

MAE HURLEY are maintained.

     I request that you notify my attorney, Eric K. Milles, Esq., GARVIN & MILLES, 1672

Metropolitan Circle, Tallahassee, FL, 32308, (850) 422-3400, in the event you provide the



EXHIBIT
B

protected health information to anyone. I also request that you notify my attorney of any request by defense counsel for you to meet with defense counsel to discuss any protected health information and further request that my attorney be allowed to attend any such meeting.

Dated this ___4th___ day of __February__ 2013.

Bobby Lee Hurley Jr.
BOBBY LEE HURLEY, JR.